UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY RAY HOYE,

        Plaintiff,                                      Case No. 1:07-cv-110

v.                                                    Honorable Paul L. Maloney

WILLIAM NELSON et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds are available.  On March 6, 2007, this Court ordered service of Plaintiff's complaint on Defendants William Nelson, Julie Tudor, Christine Meyer[1], Terry Borges, Michelle Pelon, Julie VanSetters, N. Martin, J. Armstrong, Carmen Palmer and Correctional Medical Services, Inc.

        On April 23, 2007, Defendant Terry Borges filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) because of Plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) (docket #18).  On April 30, 2007, Defendants J. Armstrong, Carmen Palmer, Michelle Pelon, Julie VanSetters and N. Martin filed a motion and brief for summary judgment on exhaustion grounds (dockets #24, 25).  Plaintiff filed a response to Defendant Borges' motion to dismiss on May 25, 2007 (docket #29).  On July 25, 2007,

---

[1] It is unclear from the pleadings whether Defendant's last name is spelled Meyer or Meyers. The Court spelled Defendant's last name as Meyer for purposes of this Report and Recommendation.

Defendants Correctional Medical Services, Inc. and Christine Meyer filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) due to Plaintiff's failure to exhaust his available administrative remedies (docket #37). On August 2, 2007, Defendant Julie Tudor filed a motion and brief for summary judgment on exhaustion grounds (dockets #41, 42).

In an order dated August 15, 2007, this Court converted Defendants Borges, Correctional Medical Services, Inc. and Christine Meyer's motions to dismiss to motions for summary judgment under Federal Rule of Civil Procedure 56 (docket #44). On August 30, 2007 and September 14, 2007, Plaintiff filed responses to the "Court's Rule 56 Order" (docket #46) and Defendant Julie Tudor's motion for summary judgment (docket #48), respectively. On September 13, 2007, Defendants Christine Meyer, Terry Borges and Correctional Medical Services, Inc. filed a reply to Plaintiff's August 30, 2007 response (docket #47).

Upon review, I recommend that Defendant Borges' motion for summary judgment (docket #18) and Defendants Correctional Medical Services, Inc. and Meyer's motion for summary judgment be denied (docket #37) as to Plaintiff's Eighth Amendment claim; Defendant Tudor's motion for summary judgment be denied in part as to Plaintiff's Eighth Amendment claim and granted in part as to Plaintiff's due process claim (docket #41); and Defendants Pelon, VanSetters, Martin, Armstrong and Palmer's motion for summary judgment be granted (docket #24) as to Plaintiff's due process claim.

**Applicable Standard for Summary Judgment**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is

insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'"

*Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

**Facts**

Plaintiff is presently incarcerated at the Deerfield Correctional Facility (ITF). In his *pro se* complaint, he sues Correctional Medical Services, Inc. (CMS), Michigan Department of Corrections (MDOC) Prisoner Affairs Administrators N. Martin and J. Armstrong, Nursing Director Julie VanSetters, and the following ITF employees: Physician Assistant Terry Borges, Nurse Julie Tudor, Doctors Christine Meyer and William Nelson, Health Unit Manager Michelle Pelon and Warden Carmen Palmer. Plaintiff alleges that Defendants CMS, Borges, Tudor, Meyer and Nelson violated his Eighth Amendment rights and Defendants Tudor, Pelon, VanSetters, Martin, Armstrong and Palmer violated his due process rights as set forth below.

First, Plaintiff argues that Defendants Nelson, Meyer and Borges violated his Eighth Amendment rights by failing to treat his medical claims for a back injury. Upon arriving at ITF, Plaintiff informed Defendant Nelson of his medical history, which include a herniated disc and

pelvic instability. Although Plaintiff requested medication, the MDOC refused to provide any pain relief except over the counter pain medications until they could verify Plaintiff's injuries. On June 2, 2005, the MDOC allegedly obtained Plaintiff's medical file but Defendant Nelson still denied Plaintiff any pain medication.

In October 2005, Defendant Tudor medically cleared Plaintiff to work as a cleaning porter despite his back injuries in violation of the "Public Works/Gate Pass Assignments" MDOC Policy Directive 03.02.121 (effective Jan. 1, 2002). Plaintiff claims that he worked as a cleaning porter to avoid sanctions and major misconducts. On October 25, 2005, Plaintiff injured his back again while working. One month later, Plaintiff received a major misconduct for refusing to work. The hearings officer found Plaintiff not guilty of the major misconduct charge due to his back injuries.

Plaintiff submitted several kites to health services for his back pain between November 2005 and February 2006 but was denied treatment by Defendants Meyer and Borges. On December 14 and 21, 2005, Plaintiff finally received pain medication and an x-ray, respectively. Plaintiff alleges that the x-ray revealed an abnormality in his spine. He was to receive a follow-up examination in five to eight weeks. When he did not receive that examination, Plaintiff sent a kite to health services again, which Defendants Meyer and Borges denied.

Plaintiff also alleges that Defendants Tudor, Pelon, VanSetters, Martin, Armstrong and Palmer violated his due process rights by denying Grievance No. ITF-06-02-00076-12D1 at Steps I, II and III. Plaintiff filed Grievance No. ITF-06-02-00076-12D1 on February 17, 2006, because "health care" refused to treat his back injury. (App. A to Compl., docket #1-2.) Plaintiff appealed his grievance to Step III. (App. C to Compl., docket #1-4.)

In his Reply to the "Court's Rule 56 Order", Plaintiff attached Grievance No. ITF-07-01-010-0050-12D1 dated January 15, 2007. (*See* Ex. 6 to Pl.'s Reply to Order, docket #46-7.) In Grievance No. ITF-07-01-010-0050-12D1, Plaintiff complains that CMS, Meyer and Borges failed to adequately treat his back pain. Plaintiff only appealed Grievance No. ITF-07-01-010-0050-12D1 to Step I. (*Id.*) He did not appeal the grievance to Step II or Step III.

Plaintiff requests compensatory damages for relief. (Compl. at 5-i; docket #1.)

## **Discussion**

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the

---

[2]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

As stated above, the Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under Section 1983. 42 U.S.C. § 1997e(a). The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement mandates "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances, and is a precondition to any suit challenging prison conditions. *Id.* at 2386-388. Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.  The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims.  *Id.* at 924-26.  Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921.  Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA.  *Id.*

      A.  **Grievance No. ITF-06-02-00076-12D1**

    Plaintiff filed Grievance No. ITF-06-02-00076-12D1 on February 17, 2006.  In Grievance No. ITF-06-02-00076-12D1, Plaintiff argues that he has been "trying to get the necessary and proper medical treatment" from "health care" since he injured his back while working as a cleaning porter.  (App. A to Compl., docket #1-2.)  While Plaintiff appealed the grievance to Step III, he failed to name any Defendant in the Step I grievance form except "health care."  (*Id.*)  The MDOC issued a Step I response on February 21, 2006, which addressed Plaintiff's grievance on the merits, and denied it because Plaintiff received proper medical care in accordance with MDOC Policy Directive 03.04.100.  (*Id.*)  Plaintiff then appealed his grievance to Step II.  The Step II response noted the grievance was untimely but addressed it on the merits as follows:

> It is noted [that] the grievant indicates the date of incident as 10/[2]8/05 and filed this on 2/17/06.  It is untimely and should have been rejected in the Step I response; however, staff responded to it.  It has been reviewed for quality review purposes. The grievant has been seen by two medical service providers (MSP).  Various medications have been ordered for the grievant . . . .  The grievant was seen as recently as 3/16/06 and there [wa]s no discussion regarding back pain.  Staff ha[s] been receptive to the grievant's need and treatment has bee[n] prescribed for him. Failure to agree with the treatment plan does not support the allegation of denial of care.  There is no evidence to support his allegation of deliberate indifference.

(App. B to Compl., docket #1-3.) Plaintiff finally appealed his grievance to Step III. On May 19, 2006, the Step III response denied Plaintiff's grievance as untimely and addressed it on the merits. (App. C to Compl., docket #1-4.) The Step III response upheld the Step I and Step II responses, noting:

> Upon appeal to Step III[,] grievant includes in his issue that he believes that he should never ha[ve] been cleared for the porter position in the first place. This is an untimely claim and irresponsible use of the grievance process by adding on the issue at Step III.

(*Id.*)

In his complaint, Plaintiff alleges an Eighth Amendment claim against Defendants Borges, Meyer, CMS, Tudor and Nelson for failing to adequately treat his back injury. In Defendants Borges, Meyer and CMS' motions for summary judgment, they argue that Plaintiff failed to exhaust his available administrative remedies as to Grievance No. ITF-06-02-00076-12D1 because the MDOC rejected the grievance in Step II and Step III as untimely, and Plaintiff failed to name any Defendants in the grievance except "health care." (Def. Borges' Br. in Supp. of Mot. to Dismiss at 5-6, docket #18; Defs. Meyer and CMS' Br. in Supp. of Mot. to Dismiss at 5-6, docket #37.) Defendant Tudor, however, failed to address Plaintiff's Eighth Amendment claim in her motion for summary judgment. (*See* Def. Tudor's Mot. for Summ. J. at 2, docket #41.) Defendant Nelson has not filed any motion in this Court.

Defendants Borges, Meyer and CMS first argue that Grievance No. ITF-06-02-00076-12D1 is untimely, and therefore unexhausted according to the Supreme Court's decision in *Woodford*. As stated above, the *Woodford* Court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its

proceedings." *Woodford,* 126 S. Ct. at 2386-388. The *Woodford* Court found that when a prisoner files an untimely grievance and his grievance has been rejected by the prison as untimely, the claim is not "properly exhausted." *Id.* at 2387. The MDOC rejected Plaintiff's grievance as untimely at Step II and Step III. (App. B to Compl., docket #1-3; App. C to Compl., docket #1-4.)

In response to Defendants' arguments, Plaintiff argues that he timely exhausted his medical claim in Grievance No. ITF-06-02-00076-12D1 because he submitted the Step I grievance on February 17, 2006, immediately after he received a February 16 response by health care staff regarding a previous kite. Under the "Date of Incident" in the Step I grievance form, Plaintiff wrote "ongoing." (*See* Ex. B to Pl.'s Reply to Def. Borges' Mot. to Dismiss, docket #29-3.) For the question "[w]hat attempts did you make to resolve this issue prior to writing this grievance" on the Step I grievance form, Plaintiff stated that he kited health care in order to obtain medical treatment for his back injury on November 2, 2005, November 7, 2005, November 14, 2005, November 18, 2005, December 1, 2005, December 6, 2005 and February 13, 2006. (*Id.*) He alleges that he has been kiting health care staff about his back injury continuously from "November 2, 2005 to the present day." (Pl.'s Reply to Def. Borges' Mot. to Dismiss at 2, docket #29; Pl.'s Reply to Def. Tudor's Mot. to Dismiss at 2, docket #48.) Plaintiff claims that the grievance coordinator crossed out "ongoing" and incorporated an arbitrary date, "October 28, 2005" under the "Date of Incident" in his Step I grievance form so that the MDOC could claim that it was untimely. (*Id.*)

The Court finds that Plaintiff's grievance is timely. Plaintiff kited health care on February 13, 2006, and filed the Step I grievance form on February 17, 2006, one day after he received an unsatisfactory response from the MDOC regarding the kite. MDOC Policy Directive 03.02.130, ¶ X, requires a grievant to file a Step I grievance form within five business days after

"attempting to resolve a grievable issue with staff." Plaintiff filed his Step I grievance form within MDOC Policy Directive 03.02.130, ¶ X's requirement. Plaintiff attempted to resolve the issue with staff on February 13, 2006 by filing a health care kite. On February 16, 2006, Plaintiff received an unsatisfactory answer to his health care kite. Plaintiff filed a Step I grievance form on February 17, 2006, four days after his February 13, 2006 medical kite, and one day after receiving the answer to his health care kite. The MDOC, however, inserted the date October 28, 2005 in Plaintiff's grievance. It appears that the MDOC incorporated the date of Plaintiff's injury as the "Date of Incident" in the Step I grievance.[3] If medical claims are to be grieved within five business days of a plaintiff's injury rather than when a plaintiff is actually denied medical treatment, then most medical claims would fail under the MDOC's timeliness requirement. Since the grievance is timely, the Court will address Defendants remaining argument regarding exhaustion.

Defendants also argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants in his grievance. (Def. Borges' Br. in Supp. of Mot. to Dismiss at 5-6, docket #18; Defs. Meyer and CMS' Br. in Supp. of Mot. to Dismiss at 5-6, docket #37.) As noted by the Supreme Court in *Jones*, "[t]he PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a) but nothing in the statute imposes a 'name all defendants' requirement for grievances . . . ." *Jones*, 127 S. Ct. at 922. *See also Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (finding that exhaustion, according to *Jones*, 127 S. Ct. at 923, is not "*per se* inadequate simply because a defendant was not named in the grievances"). In order to properly exhaust administrative remedies, prisoners must merely comply

---

[3]Plaintiff, however, alleges that he was injured on October 25, 2005 rather than October 28, 2005. (Compl. at V-i - V-ii.)

with the prison grievance procedures available to them. *Jones*, 127 S. Ct. at 922-23. Thus, "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that defines the boundaries of proper exhaustion. *Id*. at 923.

In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion.[4] This version of the MDOC Policy Directive states: "[t]he issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The record reflects that the MDOC did not reject or deny Plaintiff's Grievance No. ITF-06-02-00076-12D1 in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T for failure to name those persons being grieved; rather, the MDOC addressed the grievance on the merits.

As the *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted). "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing

---

[4]As "the MDOC's procedures make no mention of naming particular officials", the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis added)).  In this case, the MDOC apparently found that Plaintiff properly exhausted his medical claim, even though he did not name any Defendants in his grievance contrary to MDOC Policy Directive 03.02.130, because it addressed his grievance on the merits.  The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits.  When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules.  *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.").  Since Grievance No. ITF-06-02-00076-12D1 was properly exhausted as to Plaintiff's Eighth Amendment claim against Defendants[5] CMS, Borges, Tudor, Meyer and Nelson, Defendants Borges, Meyer and CMS' motions for summary judgment (dockets #18, 37) will be denied.

        While Defendant Tudor filed a motion for summary judgment, she did not address Plaintiff's Eighth Amendment claim. (*See* Def. Tudor's Mot. for Summ. J. at 2, docket #41.)  As the Supreme Court held, exhaustion is an affirmative defense, which "defendants have the burden to plead and prove." *Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344, at *1 (8th Cir. Aug. 17, 2007) (citing *Jones*, 127 S. Ct. at 919-22).  Defendant Tudor failed to introduce any proof at summary judgment to rebut Plaintiff's express averments that he exhausted Grievance No. ITF-06-02-00076-12D1.  Given that the burden remains on Defendant Tudor to plead and prove the affirmative defense, summary judgment is inappropriate on this record.  Therefore, I recommend that Defendant

---

[5]As the MDOC did not deny Plaintiff's grievance in accordance with MDOC Policy Directive 03.02.130, ¶ T, for failure to name any Defendants in his grievance, then this Court must assume that Plaintiff exhausted his grievance against Defendants CMS, Borges, Tudor, Meyer and Nelson in his civil action.

Tudor's motion for summary judgment (docket #41) be denied as to Plaintiff's Eighth Amendment claim.

Plaintiff's remaining grievance, Grievance No. ITF-07-01-0005-012D1, is unexhausted as follows.

### B.     **Grievance No. ITF-07-01-0005-012D1**

On January 15, 2007, Plaintiff filed Grievance No. ITF-07-01-0005-012D1 against Defendants Meyer, Borges and CMS for his back pain. (Ex. 6 to Pl.'s Reply to Order, docket #46-7.) At the time Plaintiff filed his complaint, February 2, 2007,[6] Plaintiff had appealed Grievance No. ITF-07-01-0005-012D1 only to Step I. (*Id.*)   The Step I grievance response is dated January 31, 2007. (*Id.*)   It was returned to Plaintiff on February 5, 2007, after Plaintiff filed the instant action. (*See id.*)   The Sixth Circuit has held that a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman*, 196 F.3d at 645 ("While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); *see also Pearson v. Sapp*, No. 99-6182, 2000 WL 1459827, at *2 (6th Cir. Sept. 19, 2000) ("Even though Pearson did file an initial grievance at the institutional level, he failed to exhaust his available remedies by pursuing an appeal of the grievance rejection to the next levels as provided by the applicable Corrections Policy and Procedure.") The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved

---

[6]Plaintiff signed his complaint on January 30, 2007, but it was received by the Court on February 2, 2007. For purposes of this case, the Court gave Plaintiff the benefit of the later filing date.

in writing . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶U.  Plaintiff only appealed his grievance to Step I.  Therefore, Plaintiff did not properly exhaust Grievance No. ITF-07-01-0005-012D1 as to his Eighth Amendment claim against Defendants Meyer, Borges and CMS. Nevertheless, the Court previously concluded that Plaintiff's Eighth Amendment claim in Grievance No. ITF-06-02-00076-12D1 is exhausted as to Defendants CMS, Borges, Tudor, Meyer and Nelson.

        C.     **Due Process Claim**

In his complaint, Plaintiff alleges that Defendants Tudor, Pelon, VanSetters, Martin, Armstrong and Palmer violated his due process rights by denying Grievance No. ITF-06-02-00076-12D1 at Steps I, II and III.  Defendants Tudor, Pelon, VanSetters, Martin, Armstrong and Palmer argue in their motions for summary judgment that Plaintiff failed to exhaust his due process claim through the three-step grievance process.   (Defs. VanSetters, Martin, Armstrong, Palmer and Pelon's Br. in Supp. of Mot. for Summ. J. at 2, docket #25; Def. Tudor's Mot. for Summ. J. at 2, docket #41.)  The PLRA requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under Section 1983.  42 U.S.C. § 1997e(a); *see also Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733.  Plaintiff does not argue or allege that he exhausted his available administrative remedies for his due process claim by filing a grievance through the three-step grievance process.

When the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.*, 477 U.S. at 322-23. To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack*, 434 F.3d at 814.  Plaintiff failed to allege or present any evidence that he exhausted his due

process claim. Therefore, I recommend that Defendants Pelon, VanSetters, Martin, Armstrong and Palmer's motion for summary judgment (docket #24) be granted as to Plaintiff's due process claim. I also recommend Defendant Tudor's motion for summary judgment (docket #41) be granted in part for Plaintiff's due process claim and denied in part as to Plaintiff's Eighth Amendment claim as stated above.

D. **Summary**

In summary, I find that Plaintiff properly exhausted his Eighth Amendment claim in Grievance No. ITF-06-02-00076-12D1 against Defendants CMS, Meyer, Borges, Tudor and Nelson. Accordingly, Defendants CMS, Meyer and Borges' motions for summary judgment (dockets #18, 37) should be denied. I also recommend that Defendant Tudor's motion for summary judgment (docket #41) be denied in part as to Plaintiff's Eighth Amendment claim.

For Plaintiff's due process claim, I find that Plaintiff failed to exhaust his claim through the three-step grievance process. Therefore, I recommend that Defendants Pelon, VanSetters, Martin, Armstrong and Palmer's motion for summary judgment (docket #24) be granted as to Plaintiff's due process claim, and, thus, dismiss Plaintiff's complaint against Defendants Pelon, VanSetters, Martin, Armstrong and Palmer without prejudice pursuant to 42 U.S.C. § 1997e(a). I also recommend Defendant Tudor's motion for summary judgment (docket #41) be granted in part for Plaintiff's due process claim.

**Recommended Disposition**

For the foregoing reasons, I recommend the following:

Defendant Terry Borges' motion for summary judgment be denied (docket #18);

Defendants Correctional Medical Services, Inc. and Christine Meyer's motion for summary judgment be denied (docket #37);

Defendant Julie Tudor's motion for summary judgment be denied in part as to Plaintiff's Eighth Amendment claim and granted in part as to Plaintiff's due process claim (docket #41);

Defendants Michelle Pelon, Julie VanSetters, N. Martin, J. Armstrong and Carmen Palmer's motion for summary judgment be granted (docket #24); and

Plaintiff's complaint against Defendants Michelle Pelon, Julie VanSetters, N. Martin, J. Armstrong and Carmen Palmer be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

Date:  October 18, 2007                                              /s/ Ellen S. Carmody
                                                                     ELLEN S. CARMODY
                                                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).